**No. 25-1492**

IN THE

# United States Court of Appeals for the Fourth Circuit

IN RE THE BOEING COMPANY

STATE OF RHODE ISLAND OFFICE OF THE GENERAL TREASURER, on behalf of The Employees Retirement System of The State of Rhode Island; LOCAL #817 IBT PENSION FUND,

*Plaintiffs-Appellees*,

v.

THE BOEING COMPANY; DAVID L. CALHOUN; DENNIS A. MUILENBURG; BRIAN J. WEST; GREGORY D. SMITH;

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Eastern District of Virginia
No. 1:24-cv-151 (Hon. Leonie M. Brinkema)

## BRIEF OF CIVIL PROCEDURE SCHOLARS AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS-APPELLEES' PETITION FOR REHEARING

William H. Narwold
Mathew P. Jasinski
MOTLEY RICE LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
860-733-6471

Hyland Hunt
Dana Kaersvang
DEUTSCH HUNT PLLC
300 New Jersey Ave. NW, Ste 300
Washington, DC 20001
202-868-6915
hhunt@deutschhunt.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

STATEMENT OF INTEREST OF AMICI CURIAE .......... 1

INTRODUCTION AND SUMMARY .......... 1

ARGUMENT .......... 2

I. The panel decision would require plaintiffs to commit to a case-specific damages model at the certification stage, contrary to fundamental principles favoring well-tested damages models. .......... 2

II. The panel decision impermissibly requires district courts to engage in merits factfinding. .......... 8

CONCLUSION .......... 12

CERTIFICATE OF COMPLIANCE AND SERVICE .......... 13

## TABLE OF AUTHORITIES

### Cases

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .... 8

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013) .... 6

*Carriuolo v. Gen. Motors Co.*,
823 F.3d 977 (11th Cir. 2016) .... 6

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .... *passim*

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .... 8

*Forsythe v. Teva Pharm. Indus. Ltd.*,
102 F.4th 152 (3d Cir. 2024) .... 6

*Garcia v. Tyson Foods, Inc.*,
770 F.3d 1300 (10th Cir. 2014) .... 7

*Green-Cooper v. Brinker Int'l, Inc.*,
73 F.4th 883 (11th Cir. 2023) .... 9

*In re IKO Roofing Shingle Prods. Liab. Litig.*,
757 F.3d 599 (7th Cir. 2014) .... 6, 7

*In re Modafinil Antitrust Litig.*,
837 F.3d 238 (3d Cir. 2016) .... 10

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016) .... 7

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) .... 6

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) .... 7

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ........................................................................................8

*Lytle v. Nutramax Labs., Inc.*,
114 F.4th 1011 (9th Cir. 2024) ...................................................................8, 9

*Nguyen v. Nissan N. Am., Inc.*,
932 F.3d 811 (9th Cir. 2019) .....................................................................7, 9

*Noohi v. Johnson & Johnson Consumer Inc.*,
146 F.4th 854 (9th Cir. 2025)..........................................................................6

*Rikos v. Procter & Gamble Co.*,
799 F.3d 497 (6th Cir. 2015) .......................................................................10

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ...............................................................................5, 6

**Statutes**

28 U.S.C. § 2072(b) ..............................................................................................5

**Rules**

Fed. R. Civ. P. 8(d) ...............................................................................................4

Fed. R. Civ. P. 18...................................................................................................4

Fed. R. Civ. P. 23(b) .........................................................................................1, 3

Fed. R. Civ. P. 23(f)..............................................................................................12

Fed. R. Civ. P. 56..................................................................................................11

**Other Authorities**

Christine P. Bartholomew,
*The Failed Superiority Experiment*, 69 Vand. L. Rev. 1295 (2016) ......................2

Sergio J. Campos,
*The Uncertain Path of Class Action Law*, 40 Cardozo L. Rev. 2223 (2019) ........5

Myriam Gilles,
*Class Dismissed: Contemporary Judicial Hostility to Small-Claims Consumer Class Actions*, 59 DePaul L. Rev. 305 (2010)...........5

J. Maria Glover,
*The Supreme Court's "Non-Transsubstantive" Class Action*, 165 U. Pa. L. Rev. 1625 (2017) ........................................................................5

Mark Moller,
*Common Problems for the Common Answers Test: Class Certification in* Amgen *and* Comcast, 2012-2013 Cato Sup. Ct. Rev. 301 (2013).......................................................4, 11

Patrick D. Murphree,
*Ascertaining Ascertainability*, 86 La. L. Rev. 365, 399 (2025).............................4

Richard A. Nagareda,
*Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97 (2009) ..........................................................................9

3 William B. Rubenstein,
*Newberg and Rubenstein on Class Actions* § 7:24 (6th ed. 2025).........................8

5 Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 1283 (4th ed., Apr. 2026 update) ...................4

## STATEMENT OF INTEREST OF AMICI CURIAE[1]

Amici are scholars with expertise in the Federal Rules of Civil Procedure, including the requirements for class certification under Rule 23(b)(3). Together, amici share a deep concern for the proper development of the law regarding class certification.

Amici are:[2]

- Arthur R. Miller, NYU School of Law
- Christine P. Bartholomew, University at Buffalo School of Law
- Sergio J. Campos, Boston College Law School
- Myriam Gilles, Northwestern Pritzker School of Law
- J. Maria Glover, Georgetown University Law Center
- Mark Moller, DePaul University College of Law

## INTRODUCTION AND SUMMARY

As the Petition explains (*see* Pet. Part II), the panel's decision split with the consensus of other courts in securities cases. Amici write separately to explain how

[1] No counsel for any party authored this brief in whole or in part, and no person or entity other than amici or their counsel made a monetary contribution intended to fund the brief's preparation or submission. This brief is accompanied by a motion for leave to file. *See* Fed. R. App. P. 29(a)(4), (b)(2).

[2] Amici file in their individual capacities as scholars with institutional affiliations solely for purposes of identification.

this departure from well-established predominance principles disrupts class-certification analysis across many different kinds of cases.

Fundamentally, the panel decision lost sight of the relevant question for class certification—whether common questions predominate—and focused instead on whether plaintiffs committed to a particular theory of price inflation and devised a case-specific method of measuring it. But there is no reason to choose among common answers, and no need to eschew tested damages methodologies in favor of bespoke tests. With district courts unable to invoke accepted methodologies and lacking clear guidance, one of the "key function[s] for a civil procedure rule—maintaining the rule of law through predictability and consistency"—will be lost. *See* Christine P. Bartholomew, *The Failed Superiority Experiment*, 69 Vand. L. Rev. 1295, 1320 (2016). The panel decision will also impermissibly require district courts to resolve merits questions at the certification stage, unnecessarily burdening litigants and judges.

## ARGUMENT

### I. The panel decision would require plaintiffs to commit to a case-specific damages model at the certification stage, contrary to fundamental principles favoring well-tested damages models.

**1.** The decision rejected predominance here because plaintiffs' damages theory—"investors were damaged by purchasing Boeing stock at inflated prices due to defendants' fraud," JA1695 (district court opinion)—"would describe virtually all

securities-fraud cases." *See* Op. 31; *see also, e.g.*, *id.* at 30, 37-38. And it faulted plaintiffs for failing to commit, at the certification stage, to a particular method for measuring per-share price inflation. *Id.* at 32, 34-36. But neither uniqueness nor committing to a specific method is required to show that common questions predominate here, when all of the potential damages methods will rise or fall on a classwide basis, JA590.

The requirement that plaintiffs commit to a detailed "case-specific damages methodology," *see* Op. 23, regardless of whether the specifics matter to the balance of common and individual questions, cannot be grounded in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). Rule 23(b)(3) permits certification if "questions of law or fact common to class members predominate over any questions affecting only individual members." Although "[c]alculations need not be exact," "a methodology that identifies damages that are not the result of the wrong" provides no assurance that damages "will not require labyrinthine individual calculations." *Comcast*, 569 U.S. at 35, 37. *Comcast* thus required the plaintiffs' damages model to fit their one remaining classwide theory of antitrust impact to ensure that individual damages questions did not overwhelm the case. *Id.* at 35-37.

The panel decision wrongly converted that specific predominance application into a free-floating requirement that all plaintiffs must commit to a single, case-specific damages methodology at the certification stage. Unlike *Comcast*, this new

mandate does not reflect a "straightforward application of class-certification principles," 569 U.S. at 34.

Rather, it is effectively a new rule, but one lacking "the usual substantive sources (text, legislative history, purpose and the like) that justify that shift." *See* Mark Moller, *Common Problems for the Common Answers Test: Class Certification in* Amgen *and* Comcast, 2012-2013 Cato Sup. Ct. Rev. 301, 328 (2013). Such requirements leave courts to "fumble their way through" the class-certification analysis without Rule 23's guidance, generating complexity, confusion, and erroneous results. Patrick D. Murphree, *Ascertaining Ascertainability*, 86 La. L. Rev. 365, 399 (2025).

And as a freestanding requirement untethered to the balance of common and individual questions, this particular rule suffers from additional problems. It distances district courts from the guideposts provided by research into common damages methodologies. It is also in considerable tension with other rules that postpone the election of remedies to later stages of a case. *See, e.g.*, Fed. R. Civ. P. 8(d); Fed. R. Civ. P. 18; *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1283 (4th ed., Apr. 2026 update) ("[A] pleader . . . will not be forced to select a single theory on which to seek recovery against the defendant.").

An individual plaintiff need not elect a measure of inflation to state a 10b-5 claim, and the panel decision does not purport to change substantive securities law. A theory that survives in an individual action but fails on certification necessarily applies substantive law differently based on procedural context. That is an abridgment the Rules Enabling Act forbids. *See* 28 U.S.C. § 2072(b); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 458 (2016); J. Maria Glover, *The Supreme Court's "Non-Transsubstantive" Class Action*, 165 U. Pa. L. Rev. 1625, 1657-60 (2017) (explaining that variance in applying a procedural rule across substantive contexts is permissible when it flows from substantive law, but varying substantive law across procedural contexts is not permissible). Class-certification rules should "effectuate[] the rights at issue in a given context," *see* Sergio J. Campos, *The Uncertain Path of Class Action Law*, 40 Cardozo L. Rev. 2223, 2283 (2019), a goal that the decision here fails to advance.

**2.** The consequences will reach far beyond securities cases. In many different contexts, courts have accepted—indeed welcomed—the same general, well-tested liability theories and damages methods that apply in similar cases.

"[S]mall-claims consumer cases are a—if not *the*—primary reason why class actions exist." Myriam Gilles, *Class Dismissed: Contemporary Judicial Hostility to Small-Claims Consumer Class Actions*, 59 DePaul L. Rev. 305, 305-07 (2010). Consumer cases often involve standard liability theories and damages methods. In

deceptive-marketing suits, for example, it is common to allege that a company "misled consumers" "by labeling" a certain product misleadingly, and that class members "paid more for the Product than they would have absent the misleading" claim, with damages being the price premium of the product as (mis)represented, compared to actual value. *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 865 (9th Cir. 2025). The same theory could apply to most deceptive practices cases, the sole differences being the product and misrepresentations—just as here, plaintiffs alleged misstatements specific to the securities at issue, *see* Op. 10-11. *See, e.g.*, *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985-86 (11th Cir. 2016); *In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 603 (7th Cir. 2014).

Other examples abound of standard liability theories that apply across cases with only minor variations. Warranty claims generally allege that consumers are harmed by purchasing a defective product. *See, e.g.*, *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 797, 800 (7th Cir. 2013); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853-54 (6th Cir. 2013). The theory of liability in many wage-and-hour cases is that employers did not compensate employees for compensable time. *See Tyson Foods*, 577 U.S. at 447-48. Certification decisions in such cases show that an approach common to many cases can satisfy *Comcast*.

This principle applies in securities cases as much (if not more) as it does in other contexts. *See* Pet. 12-14; *see, e.g.*, *Forsythe v. Teva Pharm. Indus. Ltd.*, 102

F.4th 152, 159 (3d Cir. 2024). Whether misrepresentations are described as inflating the price or as maintaining a preexisting inflation, the measure is the same: artificial inflation at purchase less artificial inflation at sale. *See In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 259 (2d Cir. 2016). But most important at class certification is that the measure is the same for all stock purchasers (class members). That the same approach describes other securities cases does not make it too generic to satisfy predominance, but rather reflects the reality that traditional "out-of-pocket" damages models are ubiquitous in securities litigation. *See* Pet. 11-12.

As other courts of appeals have recognized, across multiple substantive areas, it favors rather than undercuts certification that similar theories and damages methods have worked in other cases. *See, e.g.*, *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 818 (9th Cir. 2019) ("Courts have viewed similar models of recovery favorably in the past."); *Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1307-08 (10th Cir. 2014) (approving methodology based in part on its use in other cases).

**3.** The panel decision further diverged from established principles by holding that advancing alternative damages approaches (such as constant-dollar inflation and constant-percentage inflation) runs afoul of Rule 23. *See* Op. 32, 34-36. Alternative theories are fine so long as each option meets the *Comcast* fit test. *See, e.g.*, *IKO Roofing*, 757 F.3d at 603 (approving class certification with two damages alternatives, where "neither approach runs afoul of *Comcast*"); *Just Film, Inc. v.*

*Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (approving certification where plaintiffs "gave examples of methods for calculating damages"). *Comcast* neither prohibits alternatives nor requires a *sui generis* theory of liability. *See* 569 U.S. at 38.

**4.** Correcting the wrong turn is crucial. Courts of appeals diverge regarding the scope of the inquiry under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), at certification. *See* 3 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 7:24 (6th ed. 2025). But all agree that proposed damages methods should be reliable. *See Comcast*, 569 U.S. at 33. The panel's reasoning pulls against that requirement. It faulted the plaintiffs' showing because it "would apply in any securities fraud case." Op. 30; *see id*. at 23. But "general acceptance" is a marker of reliability. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).

The fact that other similar cases have used the same approach supports its reliability. *See Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1033 (9th Cir. 2024). Cases with approaches that are oft-used, well-tested, and proven to work in the class setting are good candidates for securing the efficiencies of the class mechanism. It subverts efficiency and reliability to add free-floating certification requirements that force more class actions to use "novel or untested" theories. *See id*.

## II. The panel decision impermissibly requires district courts to engage in merits factfinding.

It is hornbook law that in deciding class certification, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to

determining whether the Rule 23 prerequisites … are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Plaintiffs' "evidentiary proof" burden extends only to proving that "one of the provisions of Rule 23(b)" is satisfied—not the merits. *Comcast*, 569 U.S. at 33.

To the extent that liability-damages fit is even relevant to show predominance here, the question is whether plaintiffs' theory and damages line up—not whether the theory will prevail or whether the method will generate a correct damages estimate. Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 140-41 (2009) (distinguishing class-defeating fatal dissimilarity from merits-defeating fatal similarity); *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 893 (11th Cir. 2023) ("[A]ll that the named plaintiffs had to prove was that a reliable damages methodology existed, not the actual damages plaintiffs sustained."). The panel decision transgressed this fundamental boundary of the class-certification inquiry—and usurped the jury's role—by rejecting liability-damages fit based on the facts as the panel decision (impermissibly) found them. If left standing, this reasoning will sow confusion in this Court's class-action caselaw.

**1.** As numerous circuits have recognized, a court crosses the line between permissible predominance analysis and impermissible merits inquiry when its reasoning turns on whether a "proposed calculation … is accurate." *Nguyen*, 932 F.3d at 821; *Lytle*, 114 F.4th at 1027 ("disconnect" under *Comcast* only where a

"damages model is untethered from plaintiff's theory of liability such that it has no possibility of demonstrating the amount of damages"). A few examples illustrate the distinction.

In *Rikos v. Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015), a consumer class sued over deceptive marketing for a dietary supplement. The Sixth Circuit held that plaintiffs' "damages model … satisfies *Comcast*" because it fits with the liability theory that the supplement "works for *no one*." *Id.* at 523-24. The defendant's "evidence [showing] that some class members benefited from" the supplement went to the merits, not liability-damages fit. *Id.* at 523.

In an antitrust example, the Third Circuit found *Comcast* satisfied where a damages method did not "attribute a certain amount of harm [to] each individual [anticompetitive agreement]." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 262 (3d Cir. 2016). The failure to disaggregate harm fit the plaintiffs' liability theory of a collective "market-wide harm," even though this "theory may ultimately be proven wrong." *Id.*

**2.** The analysis here crossed the line into the merits, and will require district courts in this Circuit to do so in the future. Recognizing that the plaintiffs' expert had unambiguously picked a constant-percentage-inflation method in his merits report, the panel decision still rejected damages-liability fit. Why? Because, according to the decision, the alleged misstatements "suppressed a variety of

different types of information" and so could not be directed at the same coverup. Op. 41. But this was a merits call, not a predominance judgment. Plaintiffs' theory is that the statements (including omissions) "concealed the same underlying truth." *Id*. Whether or not the same-truth theory is correct (a merits question), it is susceptible of common proof and fits with the constant-percentage-inflation method—the only questions relevant to predominance. In rejecting the same-truth theory, the decision gratuitously reached the merits, after questioning whether the merits report could even be considered. *Id.* at 39-40; *see* Pet. Part III.

**3.** By engaging in impermissible factfinding to resolve not-yet-presented merits questions, the panel "und[id] the careful judge-jury balance struck by the federal rules." Moller, *supra*, at 310. Even when merits questions are properly before the court, judges cannot decide factual questions. *See* Fed. R. Civ. P. 56. Without expressly questioning this fundamental rule, the decision sweeps aside factual disputes with an ipse dixit about what the alleged misstatements mean and how investors would perceive them. *See* Op. 41. This reasoning not only answers the wrong question, it does so without following the procedural safeguards that reserve fact questions for juries, and injects a higher burden of proof than would apply at summary judgment. Moller, *supra*, at 309-10.

By crossing the line into merits decision-making, the panel decision will at best bloat class-certification proceedings with questions that do not need to be

resolved—and therefore should not be resolved—at the certification stage, no doubt leading to numerous appeals under Fed. R. Civ. P. 23(f). At worst, it will foist impermissible merits factfinding on district courts. Either way, the panel decision renders Circuit law not just wrong, but unworkable and unwieldy.

## CONCLUSION

The Court should grant rehearing.

Respectfully submitted,

s/Hyland Hunt

William H. Narwold
Mathew P. Jasinski
MOTLEY RICE LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
860-733-6471

Hyland Hunt
Dana Kaersvang
DEUTSCH HUNT PLLC
300 New Jersey Ave. NW, Ste 300
Washington, DC 20001
202-868-6915
hhunt@deutschhunt.com

*Counsel for Amici Curiae*

September 9, 2026

## CERTIFICATE OF COMPLIANCE AND SERVICE

I hereby certify that:

1. The foregoing brief is in 14-point Times New Roman proportional font and contains 2,595 words, excluding the parts exempted by Fed. R. App. P. 32(f), and thus complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the typestyle requirements of Fed. R. App. P. 32(a)(6), and the type-volume limit of Fed. R. App. P. 29(b)(4).

2. On September 9, 2026, I served the foregoing brief upon all counsel of record by filing a copy of the document with the Clerk through the Court's electronic docketing system.

s/Hyland Hunt
Hyland Hunt