No. 25-1492

# In the United States Court of Appeals for the Fourth Circuit

STATE OF RHODE ISLAND OFFICE OF THE GENERAL TREASURER, ON BEHALF OF THE EMPLOYEES RETIREMENT SYSTEM OF THE STATE OF RHODE ISLAND; LOCAL #817 IBT PENSION FUND,

*Plaintiffs-Appellees*,

v.

THE BOEING COMPANY; DAVID L. CALHOUN; DENNIS A. MUILENBURG; BRIAN J. WEST; GREGORY D. SMITH,

*Defendants-Appellants*.

On Appeal from the U.S. District Court
for the Eastern District of Virginia, Alexandria Division
No. 1:24-cv-151 (Hon. Leonie M. Brinkema)

## DEFENDANTS-APPELLANTS' RESPONSE TO PETITION FOR PANEL REHEARING OR REHEARING EN BANC

Richard C. Pepperman II
Jacob E. Cohen
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

Jeffrey B. Wall
Judson O. Littleton
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

Benjamin L. Hatch
MCGUIREWOODS LLP
888 16th Street, N.W., Suite 500
Washington, D.C. 20006
(757) 640-3727

*Counsel for Defendants-Appellants The Boeing Company, David L. Calhoun, Dennis A. Muilenburg, Brian J. West, and Gregory D. Smith*

## TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

BACKGROUND ..... 4

REASONS FOR DENYING THE PETITION ..... 9

I. The Panel Did Not Misread *Comcast* ..... 10

II. The Panel Did Not Create A Circuit Split ..... 15

III. The Panel Did Not Exceed Its Jurisdiction In Addressing Plaintiffs' Merits Report ..... 16

CONCLUSION ..... 19

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amgen Inc.* v. *Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013)....................14

*Bostick* v. *Stevenson*,
589 F.3d 160 (4th Cir. 2009)....................18

*Comcast Corp.* v. *Behrend*,
569 U.S. 27 (2013)....................*passim*

*Lytle* v. *Nutramax Labs., Inc.*,
114 F.4th 1011 (9th Cir. 2024)....................12

*Ohio Pub. Emps. Ret. Sys.* v. *Fed. Home Loan Mortg. Corp.*,
--- F.4th ---, 2026 WL 2454184 (6th Cir. Aug. 21, 2026)....................12, 13

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
725 F.3d 244 (D.C. Cir. 2013)....................12

*United States* v. *Green*,
67 F.4th 657 (4th Cir. 2023)....................18

*Waggoner* v. *Barclays PLC*,
875 F.3d 79 (2d Cir. 2017)....................3, 15

*Ward* v. *Apple Inc.*,
784 F. App’x 539 (9th Cir. 2019)....................13

**RULES**

Fed. R. App. P. 40(b)(2)....................2, 16

Fed. R. Civ. P. 23(b)(3)....................1, 10, 11, 13, 14

Fed. R. Civ. P. 23(f)....................16

## INTRODUCTION

In *Comcast Corp.* v. *Behrend*, 569 U.S. 27, 33-34 (2013), the Supreme Court held that, to satisfy Rule 23(b)(3)'s predominance requirement, plaintiffs must provide "evidentiary proof" that their requested "damages are capable of measurement on a classwide basis." Without a methodology for calculating classwide damages, the Court explained, plaintiffs cannot show that "questions common to the class" will predominate over "[q]uestions of individual damage calculations." *Id.* at 34. The Supreme Court also stressed that plaintiffs' damages methodology must be "consistent with [their] liability case." *Id.* at 35. Otherwise, there is no "assurance" that the methodology can measure appropriate classwide damages in the particular case. *Id.* at 37.

The panel here applied *Comcast* to the specific facts of this case, holding that plaintiffs had not satisfied either of *Comcast*'s requirements. First, rather than offer an actual damages methodology at class certification, plaintiffs simply stated that they intend to seek "out-of-pocket damages." But saying that investors want to recover their out-of-pocket losses is true in *every* securities case. It describes the legal standard for securities-fraud damages rather than a methodology for calculating them. As the panel explained, to determine predominance in a securities case after *Comcast*, plaintiffs must

provide a methodology for measuring the "inflation embedded in [the] stock price" throughout the class period. Op. 30. Plaintiffs did not do that here.

Second, plaintiffs also "didn't identify their theory of liability" with any specificity, asserting only that Boeing's alleged misstatements "caused its stock to trade at artificially high levels." Op. 31. Again, the panel noted, "that language would describe virtually all securities-fraud cases." *Id.* To assess whether plaintiffs' damages methodology is consistent with their liability theory, that theory "cannot be stated at such a high level of generality that it gives no factual context for the plaintiffs' claims." Op. 28 n.17. Because *Comcast* requires courts "to compare the plaintiffs' damages methodology to their liability theory," plaintiffs "need to provide the necessary information about both comparators. Here, the plaintiffs provided neither." Op. 32.

That case-specific failure does not meet any of the criteria for rehearing. *See* Fed. R. App. P. 40(b)(2). Plaintiffs primarily argue (at 1, 6-11) that the panel misread *Comcast*. But this is not a fight over *Comcast*. Before the panel, plaintiffs acknowledged that *Comcast* required them to provide a classwide damages methodology at class certification. Doc. 48 at 16-17, 18-19. The only question here is whether "out-of-pocket damages" is such a methodology—or

just the legal standard for damages in securities cases. If the latter, then even plaintiffs did not dispute before the panel that they have not satisfied *Comcast*.

Plaintiffs also argue (at 1, 11-14) that the panel created a split with *Waggoner* v. *Barclays PLC*, 875 F.3d 79 (2d Cir. 2017). As the panel explained, however, *Waggoner* "is distinguishable from this case" because the plaintiffs there "had a fixed theory and a matching methodology to test." Op. 36-37. "*Comcast* requires something to compare. *Waggoner* had it, and this record does not." Op. 37. Nor should it matter that various district courts, largely out of circuit and with comparatively little analysis of *Comcast*, have granted class certification in other securities cases. This Court does not sit *en banc* to address inconsistencies with trial-court decisions.

This case also would be an odd vehicle to address *Comcast* because plaintiffs here did so little to meet their burden. They said nothing more than that, if a class is certified, they will attempt to recover their out-of-pocket losses. But the key question is *how much* any particular investor is out of pocket due to the alleged misstatements, and that requires a methodology for measuring the alleged inflation in the stock price supposedly created by the misstatements. On that question, plaintiffs were deafeningly silent at class certification. Other cases in which the plaintiffs have made a genuine effort to

satisfy *Comcast* could present questions that might merit this full Court's attention. But this case does not.

Finally, plaintiffs make a play to blue-pencil the panel's opinion, asking this Court to "excise section II.D." Pet. 3. But contrary to plaintiffs' contention, the panel did not improperly "reach[] out" to consider plaintiffs' merits-stage report. Pet. 3-4. It was *plaintiffs* who put that report at issue. They relied on it extensively in their brief, Doc. 48 at 40-42, 43-44, and again at oral argument, Arg. Recording 37:00-18. According to plaintiffs, whatever the deficiencies in their expert's class-certification reports, his merits report remedied them—so if the panel were to vacate certification, plaintiffs simply "would go back down" on remand and move to certify the same class based on the merits report. *Id.* at 38:40-50. Having put their merits report squarely at issue, plaintiffs cannot complain that the panel explained why a remand to consider that report would be pointless.

The petition should be denied.

## BACKGROUND

1. On January 5, 2024, Alaska Airlines Flight 1282, a Boeing 737 MAX aircraft, made an emergency landing after a door plug in the fuselage detached after takeoff. The crew landed the plane safely and no one

was seriously injured. Boeing's stock price, however, declined 8% on the next trading day. Plaintiffs filed this action shortly thereafter, claiming "billions of dollars" in damages. JA45.

To support a claim for securities fraud, plaintiffs rummaged through defendants' statements over the previous several years, principally to find all references to "safety" or "quality." Their complaint thus challenges numerous different statements over a multi-year period, the bulk of which are general comments about the importance of safety and quality to Boeing's business as an aircraft manufacturer. Plaintiffs allege that defendants committed fraud by repeatedly saying that safety and quality are Boeing's "highest priority." JA37.

2. In support of class certification, plaintiffs offered an expert report from Chad Coffman. Coffman's "damages discussion was brief—just a few pages." Op. 16. This discussion was copied nearly verbatim from a "template" Coffman uses in every securities case—10 to 15 reports per year since 2020. JA718-723. In that template, Coffman states that damages in securities cases typically are calculated using the "out-of-pocket" measure. JA589-590. Under that formula, "damages are equal to the artificial inflation per share at the time of purchase minus the artificial inflation per share at the time of sale."

JA589-590. Coffman asserted that this formula is consistent with plaintiffs' theory that defendants' alleged misstatements inflated Boeing's stock price. JA589.

Coffman's report acknowledges that out-of-pocket damages cannot be calculated without first determining the amount of inflation in Boeing's stock price throughout the class period. JA590. But his report does not attempt to explain how he intends to measure this alleged inflation over the hundreds of trading days in the class period. Instead, Coffman just offers "three possible mechanisms for measuring artificial inflation—constant-dollar inflation, constant-percentage inflation and an unidentified third way." Op. 31. Both the "constant dollar" and "constant percentage" approaches assume that the inflation in Boeing's stock price remained constant throughout the class period (on either a dollar or a percentage basis). JA591-592.

In response, defendants' expert, Dr. René Stulz, testified that, "[i]f somebody tells me, I'm going to use the out-of-pocket formula, I have absolutely no idea as to how those damages will be computed because I don't know how the inputs to the formula are going to be estimated." JA1196-1197. Stulz also explained that Coffman's constant-inflation approaches are inconsistent with plaintiffs' liability theory. JA934-940. Stulz emphasized that

Coffman has not "present[ed] a methodology that could be used for estimating class-wide damages arising from the repetition of the Alleged Misrepresentations or other aspects of evolving inflation" during the class period. JA944.

In his reply, Coffman "reiterated the high-level approach he proposed in his initial report" and "still refus[ed] to commit to any specific methodology" for measuring inflation. Op. 19, 33. Coffman also "backed off his suggestion that he might use a constant approach to measuring artificial inflation," Op. 20, asserting that Stulz's criticisms "rest[] on a flawed claim that I would assume a constant inflation methodology when I have made no such assumption," JA1444-1445.

Six days after the class was certified and less than a month after he submitted his reply report, Coffman made the exact assumption he had disavowed in his reply. Op. 21-22. Coffman's merits report adopts the same "constant percentage" measure of inflation mentioned in his initial class-certification report. JA1893. The relevant sections of Coffman's merits report do not cite any evidence produced in discovery to justify his adoption of an inflation measure he had disclaimed less than a month earlier. JA1841-1901.

3. In certifying the class, the district court held that plaintiffs satisfied *Comcast* because "[t]he out-of-pocket methodology for calculating per-share inflation is … widely accepted as the traditional measure of damages for Rule 10b-5 actions and fits plaintiffs' theory of liability: that investors were damaged by purchasing Boeing stock at inflated prices due to defendants' fraud." JA1695 (quotation omitted). The court stated that "the caselaw in this Circuit does not require plaintiffs to conduct detailed damages modeling … at the class certification stage." JA1695.

4. The panel unanimously reversed, holding that *Comcast* "requires plaintiffs, at the class-certification stage, to put forth evidentiary proof of a damages methodology showing how damages are calculable on a class-wide basis in a manner that is consistent with their theory of liability." Op. 3-4. The panel concluded that plaintiffs did not meet those requirements because their expert "provided only a legal description of damages" and "remained noncommittal" about how he would measure the "inflation embedded in Boeing's stock price on any day of the class period." Op. 30. "In addition to the lack of a damages methodology," the panel held that "plaintiffs didn't identify their theory of liability," relying instead on "language [that] would describe virtually all securities-fraud cases." Op. 31.

In response to plaintiffs' argument that Coffman's merits report "cures any *Comcast* deficiencies," the panel concluded that Coffman's adoption of the constant-percentage measure of inflation in that report "isn't enough for plaintiffs to achieve class certification" because that methodology "is inconsistent with the plaintiffs' theory of liability." Op. 39-41. As the panel explained, it is not consistent with plaintiffs' allegations "to assert a damages methodology based on the conclusion that [defendants'] varying statements—of different kinds, at different points in time, with different industry and macroeconomic conditions and with evolving investors' perceptions of the riskiness of a Boeing investment—would maintain the alleged fraud by an exact percentage that never changes." Op. 41.

## REASONS FOR DENYING THE PETITION

Rehearing is unwarranted. Plaintiffs do not contend that the panel's decision conflicts with any prior decision of this Court. They instead argue that the decision "rests on a misreading" of *Comcast* and creates a "circuit split" with the Second Circuit. Pet. 6, 12. Neither is true. Plaintiffs further assert that the Court should "excise" Section II.D of the opinion because the panel improperly "reached out" to consider their merits-stage report. Pet. 14. But plaintiffs themselves put that report at issue in this appeal.

## I. The Panel Did Not Misread *Comcast*.

Plaintiffs claim that the panel "misread" *Comcast* and imposed new and onerous requirements at the class-certification stage. Pet. 6-7. The panel did no such thing. It read *Comcast* by its terms and applied it to the particular facts of this case. Plaintiffs' criticisms all depend on mischaracterizing either *Comcast* or the panel's decision.

A. In *Comcast*, the Supreme Court applied Rule 23(b)(3)'s predominance requirement to a proposed antitrust class action. In seeking certification, the plaintiffs had proposed four theories of antitrust impact. 569 U.S. at 31. After accepting only one of them for class treatment, the district court granted certification even though the plaintiffs' damages methodology "did not isolate damages" resulting from that one theory. *Id.* at 31-32. On appeal, the defendants argued that certification was improper because the plaintiffs' methodology "failed to attribute damages resulting from … the only theory of injury remaining in the case." *Id.* at 32. The Third Circuit rejected that argument, holding that this "attac[k] on the merits of the methodology [had] no place" at class certification. *Id.*

In reversing class certification, the Supreme Court emphasized that plaintiffs must "satisfy through evidentiary proof" Rule 23(b)(3)'s

predominance requirement. 569 U.S. at 33. The Court rejected the plaintiffs' methodology because it "failed to measure damages resulting from the particular" theory on which the case was premised. *Id.* at 36. Although damages calculations need not be "exact" at class certification, the Court held that a plaintiff's damages methodology "must be consistent with its liability case." *Id.* at 35. Otherwise, the Court explained, "at the class-certification stage *any* method of measurement [would be] acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be." *Id.* at 36 (emphasis in original). The Court concluded that, without a methodology for calculating damages on a classwide basis, plaintiffs "cannot show Rule 23(b)(3) predominance: Questions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.* at 34.

B. Plaintiffs start by complaining that they should not have been required at class certification to "'commit to [a] *specific* methodology' for measuring classwide damages." Pet. 7 (emphasis added). That is a red herring. Before the panel, the parties agreed about what *Comcast* requires. As plaintiffs' brief stated, "*Comcast* requires … that the plaintiffs' proposed damages methodology align with their theory of liability—meaning that it measures damages attributable to the alleged wrongdoing and can be applied

on a classwide basis." Doc. 48 at 18-19. What the parties disputed, and what the panel decided, is narrower: whether the "out-of-pocket" formula is a methodology for actually measuring damages. Plaintiffs do not even try to defend that proposition in their petition.

And for good reason: saying that investors want to recover out-of-pocket damages is akin to saying that parties claiming breach of contract want to recover benefit-of-the-bargain damages. It is a legal standard and thus a truism—not an actual methodology for measuring damages. Other courts of appeals have agreed that such generalities are insufficient to certify a class. "Merely gesturing at a model or describing a general method" to calculate damages "will not suffice" at class certification. *Lytle* v. *Nutramax Labs., Inc.*, 114 F.4th 1011, 1032 (9th Cir. 2024). Rather, plaintiffs must "demonstrate that the proposed method will be viable as applied to the facts of a given case." *Id.* As the D.C. Circuit put it, "[n]o damages model, no predominance, no class certification." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013).

Most recently, the Sixth Circuit held in another securities case that an expert's "general reference to an event study and 'other empirical analyses' is insufficient" to certify a class. *Ohio Pub. Emps. Ret. Sys.* v. *Fed. Home Loan*

*Mortg. Corp.*, --- F.4th ---, 2026 WL 2454184, at *8 (6th Cir. Aug. 21, 2026). "Without providing a more specific proposal," the court stated, "neither [the defendant] nor the court can understand the feasibility of measuring damages on a classwide basis." *Id.*; *see Ward* v. *Apple Inc.*, 784 F. App'x 539, 541 (9th Cir. 2019) ("The plaintiffs here have done even less than the *Comcast* plaintiffs: Instead of providing an imperfect model, they have provided only a promise of a model to come.").

Plaintiffs then pivot to their real argument, which is that "*Comcast* forecloses certification only when problems with the plaintiffs' damages model reveal that individual damages calculations" are needed. Pet. 7 (quotation omitted). That is exactly what the *Comcast* plaintiffs argued and what the Supreme Court rejected. There, the plaintiffs contended (and the court of appeals held) that even if the plaintiffs' damages model were defective, it would fail equally for the class and not require individual calculations. 569 U.S. at 32, 37. The Supreme Court rejected that contention because it ignores the plaintiffs' evidentiary burden under Rule 23(b)(3). To demonstrate predominance, plaintiffs must provide a methodology "establishing that damages are capable of measurement on a classwide basis." *Id.* at 34. Without such a methodology, the Court held, plaintiffs "cannot show Rule 23(b)(3)

predominance" because "[q]uestions of individual damages calculations will inevitably overwhelm questions common to the class." *Id.*

In suggesting that the panel improperly considered "damages on the merits," plaintiffs argue that whether the alleged inflation in Boeing's stock price "was constant or variable over the class period … makes no difference to predominance." Pet. 8. But this argument ignores *Comcast*'s requirement that, "at the class-certification stage … , any model supporting a plaintiff's damages case must be consistent with its liability case." 569 U.S. at 35 (quotation omitted). "Under [plaintiffs'] logic," the Supreme Court explained, "*any* method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be." *Id.* at 36 (emphasis in original). The Court held that "[s]uch a position would reduce Rule 23(b)(3)'s predominance requirement to a nullity." *Id.*

Plaintiffs also assert (at 10) that the panel's opinion "contradicts" the Supreme Court's decision in *Amgen Inc.* v. *Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455 (2013). That assertion is meritless. *Amgen* says that Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that *each* element of her claim is susceptible to classwide proof," *id.* at 469 (emphasis added), but *Comcast* requires classwide proof for one

element—damages—because otherwise "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class," 569 U.S. at 34. The panel simply applied settled Supreme Court precedent.

## II. The Panel Did Not Create A Circuit Split.

Plaintiffs contend (at 12) that "[t]he panel's opinion creates a circuit split with the Second Circuit's decision in *Waggoner*." But as the panel explained, *Waggoner* "is distinguishable from this case." Op. 36. Unlike plaintiffs here, the *Waggoner* plaintiffs committed to a specific methodology for measuring inflation—"constant dollar" inflation. 875 F.3d at 92, 105-106. In addition, "[t]he plaintiffs in *Waggoner* pressed a single, committed theory," and "[t]he fit between the misstatements and the disclosure was tight, the theory was fixed and the court found that the expert's constant-dollar model matched it." Op. 36. By contrast, "[t]his case differs on every axis." *Id.* "Where *Waggoner* had a fixed theory and a matching methodology to test, the district court here had a moving target and a menu." Op. 37. In short, "*Comcast* requires something to compare. *Waggoner* had it, and this record does not." *Id.*

Plaintiffs also argue that the panel "parted ways" with "dozens" of district-court decisions certifying classes in securities cases over *Comcast* objections. Pet. 11-12. There is a reason plaintiffs do not discuss those

decisions in any detail. It is because they generally do not contain any meaningful analysis of *Comcast*, and thus they do not call into any question the panel's reasoning. Needless to say, this Court does not sit *en banc* to address purported inconsistencies with trial-court decisions. Because the panel decision does not conflict with any decision of this Court, the Supreme Court, or another court of appeals, plaintiffs have not pointed to any basis for rehearing. *See* Fed. R. App. P. 40(b)(2)(A)-(C).

To be sure, there may be future cases that might merit the full Court's attention where the plaintiffs have made a real effort to satisfy *Comcast*. But this case is not an appropriate vehicle because plaintiffs' expert did so little.

### III. The Panel Did Not Exceed Its Jurisdiction In Addressing Plaintiffs' Merits Report.

Plaintiffs argue that the panel improperly "reached out" to consider their merits-stage report, thus "exceed[ing] its jurisdiction under Rule 23(f)." Pet. 14. Plaintiffs urge the Court to "excise that portion of the opinion." *Id.* This argument does not withstand scrutiny.

Although they insist now that Coffman's merits report "was relevant only to the merits" of their claims, Pet. 15, plaintiffs themselves made that report a central focus of their class-certification argument on appeal. Plaintiffs' brief cited the report no fewer than a dozen times. Doc. 48 at 15-16,

34 n.5, 40-42, 43-44, 46 n.11. Plaintiffs argued that Coffman "completed his merits report" after a class was certified and measured the alleged inflation in Boeing's stock price using a constant-percentage model. *Id.* at 40. Plaintiffs then described in detail how Coffman calculated constant-percentage inflation based on the declines in Boeing's stock price after the Alaska Airlines accident and other later events. *Id.* at 40-42. Plaintiffs further argued that Coffman's merits report "robustly defended his decision to apply a classwide 'constant percentage' inflation model," *id.* at 43-44, asserting that this measure of inflation "is conservative in comparison to a more typical 'constant dollar'" measure, *id.* at 44. Plaintiffs even criticized defendants for "ignor[ing] all this analysis" in "Coffman's *merits* expert report." *Id.* at 41 (emphasis in original).

At oral argument, plaintiffs went even further, pressing for affirmance of class certification based on Coffman's inflation calculations in his merits report. They argued that defendants are "essentially accusing Coffman of having made promises that he can't keep, but we know from the expert report at the merits stage that he was able to keep those promises." Arg. Recording 37:00-18. Although they stopped short of advocating harmless error, plaintiffs asked for a "common sense" outcome: "regardless of whether it's technically a harmless error, … you can't unsee the fact that they're accusing us of

promising something that we were actually able to deliver" in Coffman's merits report. *Id.* at 38:56-39:24. Plaintiffs thus contended that vacatur of class certification would be a "pyrrhic victory" for defendants because plaintiffs "would go back down" on remand and move to certify the same class based on Coffman's merits report. *Id.* at 38:40-50. Given those arguments, it should have come as no surprise to plaintiffs that the panel considered Coffman's merits report.

Plaintiffs incorrectly assert (at 15) that the parties "never briefed" whether a constant-percentage measure of inflation is consistent with their liability theory. The parties briefed at length the appropriateness of using a constant measure of inflation. Doc. 25 at 38-60; Doc. 48 at 25-31, 40-47; Doc. 51 at 13-31. Based on that briefing and the fully developed record, the panel acted well within its authority in concluding that a remand would be pointless because using a constant measure of inflation is inconsistent with plaintiffs' liability theory. *See United States* v. *Green*, 67 F.4th 657, 666 n.6 (4th Cir. 2023) ("Because this is not a close question, we see no benefit to remanding it."); *Bostick* v. *Stevenson*, 589 F.3d 160, 165 (4th Cir. 2009) ("[W]e see no need for remand in this case because no fact-finding is required, the issue has been fully briefed by each side, and the result is obvious.").

Finally, plaintiffs assert (at 16) that the panel "misunderstood the price-maintenance theory on which Coffman's analysis was based." According to plaintiffs, "[t]hat theory is rooted in Boeing's *omissions*—its failure to affirmatively confess to the misconduct." *Id.* (emphasis in original). This is the first time plaintiffs have raised an omissions theory. The panel cannot be accused of misunderstanding a theory plaintiffs never advanced. This new theory even conflicts with the petition's description of plaintiffs' claim as focusing on defendants' statements: "Boeing repeatedly assured investors that it had overhauled its safety practices and corporate culture. But those *representations* were false." Pet. 4 (emphasis added). The petition also says that plaintiffs' class-certification "motion explained that the class's claims were based on a single course of conduct by Boeing—the making of false and misleading *statements*." Pet. 5 (emphasis added). Plaintiffs ignore this contradiction.

## CONCLUSION

The Court should deny the petition.

Respectfully submitted,

/s/ Jeffrey B. Wall

Jeffrey B. Wall
Judson O. Littleton
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500
jwall@gibsondunn.com
jlittleton@gibsondunn.com

Richard C. Pepperman II
Jacob E. Cohen
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000
peppermanr@sullcrom.com
cohenja@sullcrom.com

Benjamin L. Hatch
MCGUIREWOODS LLP
888 16th Street, N.W., Suite 500
Washington, D.C. 20006
(757) 640-3727
bhatch@mcguirewoods.com

*Counsel for Defendants-Appellants The Boeing Company, David L. Calhoun, Dennis A. Muilenburg, Brian J. West, and Gregory D. Smith*

September 24, 2026

## CERTIFICATE OF COMPLIANCE

1. This response complies with the type-volume limitation of Fed. R. App. P. 40(d)(4) because it contains 3,898 words, excluding the parts of the response exempted by Fed. R. App. P. 32(f).

2. This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this response has been prepared in 14-point Century Expanded BT font.

/s/ Jeffrey B. Wall
Jeffrey B. Wall

Dated: September 24, 2026